UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| JOE WAYNE WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:16-CV-169-TAV-CCS |
| | ) | |
| GRAINGER COUNTY SHERIFF'S DEPARTMENT; | ) ) | |
| GRAINGER COUNTY DETENTION CENTER; | ) | |
| JAMES HARVILLE, Sheriff; and | ) | |
| CHRIS HARVILLE, Jail Administrator, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

On December 28, 2015, Joe Wayne Watson, a prisoner housed in the Grainger County Detention Center in Rutledge, Tennessee, filed this pro se complaint, pursuant to 42 U.S.C. § 1983, against the Grainger County Sheriff's Department, the Grainger County Detention Center, the Grainger County Sheriff, James Harville, and the Grainger County Jail Administrator, Chris Harville [Doc. 1]. Because the Middle District of Tennessee, where the action was filed originally, granted Plaintiff's *in forma pauperis* application, assessed the filing fee, and then transferred his case to this Court based on venue considerations [Docs. 2, 14], the Court turns first to the contentions advanced in the complaint.

**I.     PLAINTIFF'S ALLEGATIONS**

Plaintiff asserts that he was arrested on July 20, 2015, on a charge of domestic assault upon April Burkhart [Doc. 1 p.5]. Plaintiff contends that one week later, on July 27, 2015, he was served with "violation papers" from his parole officer and, thereafter, confined in the Grainger County Detention Center [*Id*.]. Ms. Burkhart, who had obtained an order of protection

against Plaintiff, was allowed to visit him in the Detention Center from 1 to 2 p.m. on August 6, 2015 [*Id*. at 6-7]. During that visit, she admitted that she had filed a false police report, presumably involving the domestic assault [*Id*. at 7].

On August 24, 2015, Plaintiff's parole revocation hearing was held [*Id*.]. Plaintiff had asked for a copy of the visitation sheet reflecting Ms. Burkhart's visit, but was told by Defendant Chris Harville that it was not possible to obtain a copy [*Id*.]. Plaintiff had intended to present a copy of the visitation sheet as evidence at his revocation hearing [*Id*.]. During the hearing, the arresting officers presented a videotaped recording of an interview with Ms. Burkhart concerning the assault [*Id*. at 6]. Plaintiff only learned of the videotape the day of the hearing and had not received prior notice of its existence [*Id*.].

Plaintiff alleges that his right to due process was violated because he had insufficient time to prepare his defense at his revocation hearing [*Id*. at 5]. Plaintiff lists seven individuals as potential witnesses whom he would like to call to testify at a trial, if one is convened, for the purpose of adjudicating the factual allegations and statements surrounding the parole revocation proceedings [*Id*. at 12-13]. Plaintiff also alleges, as the Court understands his assertions, that the parole violation charge was obtained one year prior to his court date of August 28, 2015, when he was found not guilty of the charge which prompted the parole revocation proceedings in the first place.[1]

---

[1] These assertions are at odds with Plaintiff's contentions that the domestic assault charge arose from an incident which occurred on July 20, 2015, and that the parole violation warrant was served on Plaintiff on July 27, 2015. The differing dates alleged for these events are immaterial to the resolution of this case.

On September 14, 2015, a warrant was issued for Ms. Burkhart on a charge of felony filing of a false police report but, allegedly in dereliction of his duty as an officer in the Grainger County Sheriff's Department, one of the officers who arrested Plaintiff took a vacation before serving the warrant on Ms. Burkhart.

Plaintiff filed various requests for books from the Detention Center law library. Plaintiff has listed the legal requests he made via the "kiosk machine" where inmates type in their requests [*Id.* at 8-11]. Each request typed into the kiosk receives an I.D. number and an answer. Plaintiff explains that some of what he typed into the kiosk machine was deleted before he could copy down everything which appeared on the kiosk screen. Plaintiff has set forth the subject matter of each request, the date and time of the request, and the general category of each request. Plaintiff likewise has listed the answers he received in response, but some of the answers are not connected to a specific request he submitted.

Finally, Plaintiff maintains that the living conditions in the jail are sub-par, in that they include black mold growing in the "dorm side" showers and a janitorial closet, which leaks harmful fumes and which have made him sick and caused him to vomit at least two to three times a week.

Plaintiff seeks relief in the form of a jury trial, where he can call the listed witnesses and present the allegations contained in the complaint as evidence to show that that his state parole revocation proceedings were marred by procedural irregularities and that the revocation of his parole led to his false imprisonment [*Id.* at 5].

## II. SCREENING and LEGAL STANDARDS

The Court must now review the complaint to determine whether it states a claim entitling Plaintiff to relief or is frivolous or malicious or seeks monetary relief from a defendant who is

immune from such relief.  28 U.S.C. § 1915(e)(2) and § 1915A.  If so, this suit must be dismissed.  In performing this task, the Court bears in mind the rule that pro se pleadings filed in civil rights cases must be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Still, the complaint must be sufficient "to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which simply means that the factual content pled by a plaintiff must permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  The "facial plausibility" standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation" and more than "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*  The standard articulated in *Twombly* and *Iqbal* "governs dismissals for failure state a claim under [§§ 1915A(b)(1) and 1915(e)(2)(B)(ii)] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

In order to state a claim under 42 U.S.C. § 1983, Plaintiff must establish that he was deprived of a federal right by a person acting under color of state law.  *Black v. Barberton Citizens Hospital*, 134 F.3d 1265, 1267 (6th Cir. 1998); *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992).  *See also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) ("Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere.").

The Court examines the claims under these guidelines.

### III. LAW and ANALYSIS

#### A. Non-Suable Entities

The first Defendant named in the complaint is the Grainger County Sheriff's Department. Unfortunately for Plaintiff, he fails to state a § 1983 claim against the Grainger County Sheriff's Department because this Defendant is not a "person" subject to suit within the terms of the statute. *See Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 689-90 n.53 (1978) (Only "bodies politic" are "persons" who can be sued under 42 U.S.C. § 1983.). The Court has held previously that a Sheriff's Department is not an entity subject to suit under § 1983. **See** *Bradford v. Gardner*, 578 F.Supp. 382, 383 (E.D. Tenn. 1984) (citing *Williams v. Baxter*, 536 F.Supp. 13 (E.D. Tenn. 1981)); *see also Petty v. County of Franklin*, 478 F.3d 341, 347 (6th Cir. 2007); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991); *Brinkley v. Loftis*, No. 3:11–CV–1158, 2012 WL 2370106, at *3 (M.D. Tenn. June 22, 2012).

The second Defendant, the Grainger County Detention Center, is a building which serves as a place for confinement for those in custody, and it is not a suable entity either. This Court and other courts in this circuit have so held. *See Marbry v. Corr. Med. Serv.*, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) (holding that "the Shelby County Jail is not an entity subject to suit under § 1983") (citing *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991)); *Cage v. Kent Cnty. Corr. Facility*, 1997 WL 225647, at *1 (6th Cir. May 1, 1997) (stating that "[t]he district court also properly found that the jail facility named as a defendant was not an entity subject to suit under § 1983"); *Russell v. Juvenile Court of Kingsport, Tenn.*, No. 2:15-CV-13, 2015 WL 3506523, at *4 (E.D. Tenn. June 3, 2015) (finding that the Sullivan County jail is a building and not a suable entity within the meaning of 42 U.S.C. § 1983); *Seals v. Grainger Cnty. Jail*, No.

5

3:04-CV-606, 2005 WL 1076326, at *1 (E.D. Tenn. May 6, 2005) (same, with respect to the Grainger County jail).

B.  **Parole Revocation**

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that an action for damages for an alleged constitutional conviction or for "harm caused by actions whose unlawfulness would render a state conviction or sentence invalid," cannot be maintained unless the prisoner can show that his conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87.

Although *Heck* involved a state prisoner's § 1983 action for damages, the Supreme Court has clarified that its holding applies even if damages are not sought. "[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of the confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (emphasis in original).

The *Heck* doctrine applies to a claim challenging state parole revocation proceedings. *Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) (finding *Heck* applicable where a plaintiff's success on his § 1983 action would "'necessarily demonstrate' the invalidity of the Parole Board's decision to revoke his parole"); *Norwood v. Michigan Dep't of Corr.*, 67 F. App'x 286, 287 (6th Cir. 2003) (ruling that *Heck* erected a bar to a parole revocation claim based on an alleged race-based, retaliatory conspiracy); *Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir.

6

1996) ("[*Heck*] applies to proceedings that call into question the fact or duration of parole or probation."); *Jackson v. Vannoy*, 49 F.3d 175, 177 (5th Cir. 1995) (same); *Mason v. Stacey*, No. 4:07-CV-43, 2009 WL 803107, at *7 (E.D. Tenn. Mar. 25, 2009) (same).

Here, Plaintiff seeks a trial or, in effect, a re-trial of his parole revocation proceedings, at which he can call witnesses and present evidence and, presumably, be granted relief from his false imprisonment. If the Court were to find that Plaintiff is being falsely imprisoned on his revoked state criminal sentence and is entitled to a trial with respect to the revocation of his parole, these conclusions undoubtedly would impugn the validity of his state sentence.

Plaintiff has not alleged or shown that the revocation of his parole has been overturned either on direct appeal or by a federal habeas corpus decision. Indeed, the Board of Parole denied Plaintiff's administrative appeal of the decision to revoke his parole, finding no support for his claim of new evidence or of significant procedural error [Id. at 17]. Thus, all of Plaintiff's allegations involving his parole revocation proceedings are precluded by *Heck*.

C. **Access to Courts**

In Claim "5A," Plaintiff alleges that "the violation of my civil rights are as follows about getting law library books for my case" [*Id.* at 7]. Claim "5C" contains a list of Plaintiff's grievances involving various subjects, some of which are labeled "legal" and which appear to be requests for law books from the facility law library [*Id.* at 9-11]. In Claim "5C", Plaintiff states that those grievances illustrate that he made legal requests and also show the answers to those requests [*Id.* at 12]. The Court charitably reads this pro se prisoner's allegations as an implied claim that he has been denied access to the courts.

7

It is true that prisoners have a constitutional right of access to the courts, *Bounds v. Smith*, 430 U.S. 817, 821 (1977), but they do not have an abstract, freestanding right to a law library in prison, including specific codes or legal books. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). To state a claim for denial of access to the courts, a plaintiff must show prejudice, such as the late filing of a court document or the dismissal of a non-frivolous claim, resulting from the inadequate jail law library. *Pilgrim v. Littlefield*, 92 F.3d 414, 415-16 (6th Cir. 1996) (citing *Lewis*, 518 U.S. at 351).

Here, however, Plaintiff does not actually set forth any allegation of prejudice, much less make the kind of concrete, specific "litigation-related detriment" which typically satisfies the prejudice component of an access-to-courts claim. *Id.* at 415-16 (finding that a conclusory allegation of prejudice, along with an exhibit showing that the state court denied two motions filed by the inmate were insufficient to state a claim of prejudice). Hence, absent an allegation of actual prejudice, Plaintiff has not stated a valid claim for denial of access to the courts.[2]

### D. Confinement Conditions

Plaintiff makes two claims of unconstitutional conditions of confinement, i.e., that there is black mold in the "dorm side" showers and that a janitorial closet is sealed shut, but leaks harmful fumes which sicken him and cause him to vomit several times weekly.

Both allegations fail to state an Eighth Amendment claim, but the latter one might pass muster if it is amended.

---

[2] Furthermore, to the extent that this inferred claim of a denial of access to the courts is attached to an attack on Plaintiff's revocation proceedings, *Heck* would similarly preclude this claim.

8

An Eighth Amendment violation requires a Plaintiff to establish two components. First, a plaintiff must show a "sufficiently serious" deprivation (the "objective" component). Second, a plaintiff must demonstrate a sufficiently culpable state of mind (the subjective" component), i.e., that a defendant was "deliberately indifferent" to a substantial risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994).

"[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Though restrictive or even harsh conditions do not violate the Eighth Amendment, a prisoner may not be subjected to a condition which strips him of the bare necessities of life. *Id.* at 347. However, only where a deprivation is extreme can it be characterized as punishment prohibited by the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992). An extreme deprivation is one "so grave that it violates contemporary standards of decency to expose *anyone* unwilling to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original). In other words, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id*.

Plaintiff's allegation that the showers contain black mold does not amount to the type of extreme deprivation necessary to demonstrate an Eighth Amendment violation. This is so because "some exposure to black mold is a risk that society has chosen to tolerate." *McIntyre v. Phillips*, No. 1:07-CV-527, 2007 WL 2986470, at *3 (W.D. Mich. Sept. 10, 2007); *see Juliot v. Osborne*, No. 4:14CV-P1-M, 2014 WL 4259429, at *4 (W.D. Ky. Aug. 27, 2014) ( finding that a "mere allegation of the presence of some mold does not create a condition intolerable for prison confinement" (citation and internal quotation marks omitted) (listing cases); *Perryman v. Graves*, No. 3:10-MC-109, 2010 WL 4237921, at *3 (M.D. Tenn. Oct. 20, 2010) (listing cases which hold that mere exposure to black mold, absent allegations of present or future physical

9

harm, does not state a claim for violation of the Eighth Amendment). Therefore, Plaintiff has failed to state a claim entitling him to relief under § 1983.

An Eighth Amendment violation contains two components. First, a plaintiff must show a "sufficiently serious" deprivation (the "objective" component), as discussed above. Second, a plaintiff must demonstrate a sufficiently culpable state of mind (the subjective" component), i.e., that a defendant was "deliberately indifferent" to a substantial risk of hare. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994).

Plaintiff's allegations involving the emission of harmful vapors from a closet arguably constitute a "sufficiently serious" deprivation. However, Plaintiff has failed to allege facts from which the Court could infer the existence of the requisite mental state of deliberate indifference on the part of either of the two remaining Defendants with respect to those fumes. Without factual contentions to support "the reasonable inference that the defendant is liable for the misconduct alleged" *Iqbal*, 556 U.S. at 678, Plaintiff fails to state a plausible Eighth Amendment claim.

## IV. CONCLUSION

Based on the above discussion, Plaintiff's contentions regarding the revocation of his parole are **DISMISSED** without prejudice under *Heck* and those involving access to the courts and black mold in the "dorm side" showers are **DISMISSED** with prejudice. However, Plaintiff will be offered the opportunity to amend his complaint to correct the deficiencies noted herein *only* with regard to his remaining claim of exposure to harmful fumes. *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) (finding that "a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA").

10

Accordingly, unless within twenty (20) days from the date on this order, Plaintiff amends the cited claim, that claim and this entire case will be **DISMISSED** for failure to state a claim entitling him to relief under 42 U.S.C. § 1983.

**IT IS SO ORDERED**.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE